# IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

FILED
September 15, 1999

STATE OF TENNESSEE, DEPT. OF ) C/A NO. 03A01-9810-JV-00341
CHILDREN'S SERVICES, )
                            ) HAMILTON JUVENILE
      Petitioner-Appellee, )
                            ) HON. SUZANNE BAILEY,
v. ) JUDGE
                            )
LEON WILKERSON, )
                            )
      Respondent-Appellant, )
                            ) AFFIRMED
IN THE MATTER OF: ) AND
KUBRA SATTERFIELD. ) REMANDED

PAUL G. SUMMERS, Attorney General and Reporter, and
ELIZABETH C. DRIVER, Assistant Attorney General, Nashville, for Petitioner-Appellee.

JAY KU, Chattanooga, for Respondent-Appellant.

## O P I N I O N

Franks, J.

This is an appeal from the Trial Court's terminating any parental rights of Leon Wilkerson to Kubra Satterfield.

The Trial Judge, in terminating Wilkerson's parental rights, said in the judgment:

That Leon Wilkerson's connection to the subject child is only that of his marriage to the natural mother, that he is not the biological father by his own admission and has never seen the subject child and, therefore, the petition filed by the State of Tennessee, Department of Children's Services, is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that the subject child has been in the custody of Petitioner for at least six (6) months; that the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home; that the Defendant, Leon Wilkerson, has been confined in a correction or detention facility by order of a court as a result of a criminal act under a sentence of 10 or more years and the subject child was under eight years of age at the time the sentence was entered by the court. Specifically, Leon Wilkerson, was sentenced in 1995 to eight (8) years for drugs and two (2) years for reckless killing; it is therefore, for the best interest of the said child and the public that all of the parental rights of the Defendant to the said child be forever terminated . . .

Kubra was taken into State custody for dependency and neglect, pursuant to Tennessee Code Annotated §37-1-128 on May 16, 1996. Kubra was placed in a foster home shortly thereafter, where he has remained. Kubra requires intensive, round-the-clock care, due to his medical conditions.[1] The Department has identified a family interested in adopting Kubra, and that family has already has some contact with the child, due to their friendship with his foster parents.

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct.1208 (1972). However, that right is not absolute, and parental rights may be terminated if there is clear and convincing evidence justifying termination under the applicable statute. T.C.A. §36-1-113(c)(1). Additionally, all issues are premised on the foundation of "what is in the best interest of the child". *Tennessee Department of Human Services v. Riley*, 689 S.W.2d 164-169 (Tenn. App. 1984).

Parental rights may be terminated in a limited number of statutorily

---

[1] Kubra was born testing positive for Valium and crack cocaine, and with serious medical problems. His mother, Anice, tested positive for crack cocaine, syphilis, and was homeless at the time of delivery.

defined circumstances, and then only if the court determines the termination is in the child's best interest. *In the Matter of M.W.A. Jr.*, 980 S.W.2d 620 (Tenn. App. 1998). Parental rights may also be terminated when continuing the parent-child relationship poses a substantial threat of harm to the child. *Id.* The Court terminated Wilkerson's parental rights under T.C.A. §36-1-113(g). Section (g)(6) provides for termination in the following situation:

> The parent has been confined in a correctional or detention facility of any type by the order of a court as a result of a criminal act, under a sentence of ten or more years, and the child is under eight years of age at the time the sentence is entered by the court.

Wilkerson admitted that he was incarcerated for a sentence of ten years for reckless killing and drug offences. The child was under the age of eight at the time of sentencing. Thus, the requirements of the section are met for terminating parental rights.

In this case, Kubra has been in the Department's custody for more than six months. Wilkerson's incarceration is a condition that prevents Kubra from returning to the care of a parent, and Wilkerson is unlikely to remedy that situation in the near future. While he expected to be released on parole, he had over six years left to serve on his sentence. Additionally, continuation of the parent-child relationship would greatly diminish the child's chances of integration into a stable and permanent home, as it could be up to six years before Wilkerson could begin to provide a home for Kubra.

While Wilkerson does not dispute the statutory grounds for termination of his parental rights, he claims that he did not receive proper notice of the earlier dependency and neglect proceeding, and was thereby denied his due process. He also says that the Department failed to give him lawful notice when Kubra was taken into State custody, or allow him as a legal father to make a choice or have input into the

3

appointment of a guardian.

Wilkerson's argument that he was denied due process because he was not given notice of the initial proceeding, does not establish a basis to overturn the Trial Court's decision. It is clear, however, that Wilkerson received full procedural protection at the termination proceeding upon which this appeal is based. Wilkerson received notice of the hearing and was transported to Court to be present at the hearing. He was informed of his right to counsel and was appointed counsel upon his request. The hearing was rescheduled to allow him to meet with his attorney. Wilkerson was present and testified at the termination hearing, and had the assistance of counsel.

We have previously addressed the question of due process implications, when a parent does not receive notice of the dependency and neglect proceeding, but later participates in the termination proceeding. In *State of Tennessee Department of Human Services v. Grove*, 1989 WL 3137 (Tenn. App. 1989), a mother argued that she did not receive due process protection because she did not receive notice of the original DHS petition for a custodial preliminary hearing. In upholding the termination of her parental rights, the Court said that "appellant overlooks the salient fact that she later intervened in the Juvenile Court action and there asserted her plenary rights; any lack of due process initially was thereafter fully supplied." *Grove* at *3.

Like the appellant in *Grove*, Wilkerson asserted his plenary rights at the termination hearing, and any initial lack of due process was remedied by the full procedural protections afforded to Wilkerson at the termination hearing. "[E]ven if it can be said that the appellant was deprived of due process in the 'dependency and neglect' proceeding in the Juvenile Court, there is no claim of such deprivation in the ... action to terminate parental rights." *Grove* at *3.

4

Wilkerson complains that the lack of notice in earlier proceedings denied him the opportunity to participate in the custody decision, and he says that "he could have aided in locating a relative placement and suggested alternative placements." Wilkerson had no custody option for Kubra. A representative of the DCS met with Wilkerson and asked him what plans he would make for the child, and Wilkerson suggested that Kubra could live with Wilkerson's mother who resides in Washington, D.C. However, it developed that Wilkerson's mother was not willing to take custody of Kubra, and Wilkerson, being incarcerated, could not care for the child himself and did not offer any other viable option when consulted.

Wilkerson also complains that he was denied the ability to participate in a plan of care. However, a plan of care requires the parent to take steps toward providing a stable home for the child, which means acquiring appropriate housing, maintaining stable employment, and providing financially for the child. *See generally* T.C.A. §37-2-403. Finally, Wilkerson argues that by failing to allow him to participate in a foster care plan, the Department was given an additional reason for terminating his parental rights and processing a "no contact" order. However, Wilkerson's inability to participate in the foster care plan or provide an alternative custody option is entirely separate from the reasons for terminating his parental rights. Whether or not Wilkerson was able to participate in any decisions regarding the child, an independent basis for terminating parental rights was established by clear and convincing evidence. *See* T.C.A. §36-1-113(g)(6) and §(g)(3)(A). The record also establishes that termination is in the best interest of the child.

We affirm the judgment of the Juvenile Court and remand with cost of the appeal assessed to the appellant.

_____
Herschel P. Franks, J.

CONCUR:


_____
Charles D. Susano, Jr., J.




_____
D. Michael Swiney, J.